MIDDLEBROOK v. SLOCUM.

1. WORK AND LABOR—IMPLIED CONTRACT—RECOVERY.

Plaintiff was employed by defendant to work in his flouring mill at a specified wage per week, and subsequently defendant erected an electric lighting plant in which plaintiff worked during hours not contemplated in the express agreement and after work had ceased in the mill and plaintiff was occupied at other employment, no price for the work in the plant being agreed upon. *Held*, that the work in the plant was not included in the express contract, and that plaintiff was entitled to the reasonable value of his services in case there was an implied contract therefor.

2. SAME—IMPLIED CONTRACT—EXISTENCE.

Where services are rendered without any express agreement therefor, but under circumstances creating in the mind of the recipient a belief that he is to be required to pay therefor, and in the mind of the person rendering them the expectation of pay, there is an implied agreement to pay the reasonable value of the services.

3. EVIDENCE—PAYMENTS—MATERIALITY.

Where defendant claims to set off certain payments made on a contract for plaintiff's benefit, a part of which plaintiff claims to have made himself, the fact that plaintiff gave his wife a sum of money which he claims represents one of the payments is material.

4. TRIAL—INSTRUCTIONS—STATEMENTS OF FACT—ERROR—CORRECTION.

Where a mistake of fact is made by the court in stating the claim of a party in the instructions, it is the duty of counsel to correct it at once.

5. HUSBAND AND WIFE—SUPPORT OF WIFE—LIABILITY OF HUSBAND.

While a husband ordinarily is liable for his wife's board, where she is guilty of such misconduct, while living with her husband in her father's house, that her husband cannot remain with her there, and her father, with knowledge of her conduct, approves it and harbors her, he cannot recover for her board.

Error to Ionia; Davis, J.. Submitted October 15, 1907. (Docket No. 58.) Decided May 1, 1908.

Assumpsit by Lee F. Middlebrook against Harley B. Slocum for work and labor. There was judgment for plaintiff, and defendant brings error. Affirmed.

*R. A. & W. E. Hawley*, for appellant.

*Scully & Davis*, for appellee.

McALVAY, J. This suit was begun by plaintiff before a justice of the peace in Ionia county. Defendant appealed to the circuit court from a judgment of $300 rendered in favor of plaintiff. From a judgment of like amount rendered in the circuit court, upon a verdict of a jury, the defendant upon a writ of error brings the case to this court for review. Plaintiff's claim is for work and labor which he alleges was performed in defendant's mill under an express contract at the rate of $3 per week and board, which he says was later increased to $4 per week and board. This board, he claims, included also the board of his wife and child. He also claims for work and labor performed in running defendant's electric light plant for 450 nights at $1 per night. Both parties filed bills of particulars, and in their briefs state that most of the items in the same are admitted.

Appellant claims that the only items of account important to be considered in this court are:

1. Plaintiff's claim for work at the electric light plant for 450 nights at $1 per night, $450.

2. Defendant's claim for board of wife and child of plaintiff for 26 weeks at $4, $104.

3. Payments made by defendant on plaintiff's piano contract, $325.88.

4. The value of one horse of defendant sold by plaintiff, $150.

Plaintiff, at the request of defendant, when the electric lighting plant which was to furnish lighting for the village was installed, was instructed by the superintendent of

installation how to run the plant, do wiring, etc., and became competent to do the work. It was done by him at the request of defendant. No price for the services was ever agreed upon between the parties, and defendant's counsel claim that as they were performed while plaintiff was working under an express contract by the week for defendant there was not sufficient evidence in the case to warrant the submission of this item to the jury, and that there must be proved an express agreement for extra pay under such circumstances, citing *Schurr* v. *Savigny*, 85 Mich. 144, and other cases.

The contract as made between the parties in the first instance was that plaintiff would work in the flouring mill learning the business, and receive as his compensation $3 per week and board. This is undisputed. Plaintiff claims that this continued until June 1, 1901, when the wages were increased to $4 per week and board. He married defendant's daughter in February, 1901, and claims that it was agreed that the last contract should include the board of his wife and child. The electric light plant was installed and plaintiff's work in that plant began November 26, 1902. It was therefore impossible that any such work as this was within the contemplation of these parties in June, 1897, when they entered into the contract at $3 per week and board, nor later in June, 1901, when plaintiff claims the wages were increased. The work is entirely different from the work under the original or modified contract. It was performed during hours not contemplated in the express agreement. 175 nights of the work charged occurred after work in the mill ceased and when plaintiff was driving a mail route. The case is not within the rule laid down in *Schurr* v. *Savigny*, supra. Nor do we think that the other cases cited are in point. The only question is whether the testimony on the part of plaintiff was sufficient to submit to the jury the proposition of an implied agreement as to the work in the lighting plant. The court submitted the question to the jury, instructing them as follows:

"In the first place whether rendered under circumstances creating in the mind of the defendant the right to believe he was to be required to pay, and whether there was an expectation of pay on the part of the plaintiff at the time he rendered these services, if one expected pay and the other expected to pay for the services, then the law says he should receive such amount as would be reasonable and just under the circumstances for his services. If there was nothing said about how much was to be received and the circumstances were such a reasonable man could not say that defendant expected under the circumstances he would be required to pay anything, and that the other party did not expect at the time to receive anything, then the law says there is no contract liability and he should not receive anything."

There was evidence in the case which justified the submission of this question to the jury, and the charge above quoted was not erroneous.

The other matters relied upon by appellant relate to claims made by him against plaintiff. Plaintiff had bought a piano for his wife on contract. Payments had been made upon this contract for plaintiff by defendant. The amount of such payments was in dispute. Defendant claims that the court erred in submitting to the jury the matter of a payment of $75 on this contract which plaintiff claimed to have made through his wife, giving her the money for that purpose. This testimony was brought out on cross-examination of plaintiff by defendant's counsel relative to the piano contract, which contract and a computation showing payments and amount due thereon, March 20, 1903, were then produced by defendant in evidence. Part of his testimony may have been hearsay, but the fact that he gave his wife $75 was material because it appeared from other testimony that a payment of $75 had been indorsed on a copy of the contract which was produced at the former trial, but was not produced at this trial and defendant's computation did not contain any such payment, nor did he claim credit for a payment of that amount. It was proper to submit the matter to the jury.

152 MICH.—19.

There was a dispute between the parties relative to the value of a horse of defendant. Plaintiff had a horse which defendant took away for purposes of sale. It was injured by being kicked, and defendant sent one of his horses to plaintiff for his use. He admits that plaintiff's horse when he took it was worth at least $100. It is claimed by defendant and his wife that he wrote to her that plaintiff might sell the horse for $150 and take $100 out of it. The wife testified that she told plaintiff of this. The letter is not produced. Plaintiff testified that she told him she had received a letter authorizing him to sell the horse and it ought to be an easy matter to get $150 for it; that she finally told him to do the best he could. She testified that she told him to sell it for $135. There was clearly a question for the jury. Defendant and his wife did not agree as to what the letter contained.

The court in his charge said:

"Now the defendant also claims for $35 difference on horses. You have heard the evidence as to the value of those horses, the circumstances under which defendant, the father-in-law, took this horse north, the circumstances under which it was brought back, the disposition of the two horses; it is claimed on the part of the defendant that his wife told this young man he could sell the horse for $135 and to take no less. On the other hand this is disputed on the part of the plaintiff."

Defendant now takes the position that this charge was entirely unwarranted. No such intimation was made at the time to correct the above statement of defendant's claim made by the court.

We have examined the evidence and are satisfied that the question should have been submitted to the jury. If any mistake of fact was made by the court stating defendant's claim (and the presumption is there was not) counsel for defendant should have corrected it at once.

Defendant claimed $104 for board of plaintiff's wife and child for 26 weeks after plaintiff left. Plaintiff claims he left defendant's house on account of the con-

duct of his wife with one Clark who visited there; that his wife refused to come away with him; that this was the only cause of difference between them. He told his troubles to defendant and Mrs. Slocum, and defendant heard from other sources what plaintiff claimed. Plaintiff testified that he was ordered out of the house and was told that he was not wanted there any more. The testimony on the part of defendant contradicted much of plaintiff's testimony upon these matters. Later plaintiff's wife secured a divorce from him, and married Clark.

Error is assigned upon the charge of the court in submitting this claim for board to the jury. This portion of the charge is too long to quote. Taken as a whole, we find that the court told the jury that ordinarily the law would require plaintiff to pay such board, but if by reason of her conduct plaintiff could not remain with her there and defendant with knowledge of her conduct approved it and harbored her he could not recover; that such conduct must have been without any wrong or connivance of plaintiff, and that he must show the truth of all this by a preponderance of evidence; that if the jury were satisfied by a preponderance of the proof that her conduct was such that a man could not keep his self-respect, and he believed she was guilty of misconduct, and that was the reason he left, and defendant had full knowledge of all the facts, and kept her as a boarder, he could not recover, otherwise, he could. The jury had heard all the testimony and knew to what facts the court referred. It was not necessary for the court to repeat the evidence bearing upon the question. The question was one of fact for the jury. No requests to charge were presented by defendant and the charge cannot be said to have been prejudicial to defendant.

We do not find any reversible error in the case.

Judgment is affirmed.

OSTRANDER, HOOKER, MOORE, and CARPENTER, JJ., concurred.