STATE OF INDIANA, EX REL., SCHROEDER ET AL. *v.* MORRIS, MAYOR, ET AL.

[No. 25,105.   Filed February 18, 1927.]

1. STATUTES.—The grammatical construction of a statute may be disregarded when the legislative intent is plain.   p. 82.

2. MUNICIPAL CORPORATIONS.—*Statute in relation to fire department in certain cities construed to require division of fire force into day and night platoons.*—Although awkwardly worded, the act of 1920 (Acts 1920 [Spec. Sess.] p. 196, §10878 Burns 1926) in reference to the fire department in cities with a population exceeding 15,000 is construed to mean that the fire force shall be divided into two bodies or platoons, one to perform day service and the other to perform night service.   p. 82.

3. PLEADING.—*Memorandum with demurrer not supposed to contain argument in support of demurrer.*—The provision of the statute requiring a memorandum with a demurrer for want of facts (§362, cl. 6, Burns 1926) does not contemplate that such memorandum should contain an argument, but only that it should clearly and concisely point out the facts wanting in the pleading.   p. 82.

4. MANDAMUS.—*Complaint held to show joint interest of relators entitling them to maintain action of mandate.*—A complaint by members of the fire department in a third class city seeking to mandate the mayor and common council to divide the fire force into day and night platoons as required by §10878 Burns 1926, sufficiently showed a joint interest in the relief demanded to entitle the relators to maintain the action.   p. 83.

5. EVIDENCE.—*Courts judicially know that New Albany had population of 20,000 in 1920 and was city of third class.*—The courts judicially know the population of cities in this state as shown by the United States census, and, therefore, know that the city of New Albany had a population of more than 20,000 in 1920 and hence was a city of the third class (§10261 Burns 1926).   p. 83.

6. MANDAMUS.—*Mayor, common council and board of safety proper defendants in action to enforce compliance with statute regulating fire*

*department.*—In an action to compel compliance with the act of 1920 (Acts 1920 p. 196, §10878 Burns 1926) requiring that in cities having a population exceeding 15,000 and a paid fire force, such fire force should be divided into a day and night force, the mayor, common council and board of safety were properly made defendants, as each of them might be factors in delaying and possibly defeating the purpose of the statute.    p. 84

7. CONSTITUTIONAL LAW.—*Necessity of dividing city fire force into two platoons was legislative question and courts cannot interfere.*— Whether conditions were such in cities of more than 15,000 population as to justify the enactment of a law requiring the division of the fire force into two platoons, one for day service and one for night service, was a question for the legislature and not a subject for judicial determination by the courts.   p. 84.

8. MUNICIPAL CORPORATIONS.—*Liberal construction of statute for dividing fire force into platoons no excuse for disregarding it.*—The act providing for the division of the fire force into two platoons in cities of more than 15,000 (Acts 1920 [Spec. Sess.] p. 196, §10878 Burns 1926), one for day service and one for night service, and further providing that no member of the force shall be on duty continuously for more than twenty-four hours except in emergencies, is mandatory in form and in the interest of the public, and even a liberal construction would be no excuse for disregarding it.   p. 85.

9. MUNICIPAL CORPORATIONS.—*Statute for dividing fire force into platoons for day and night service is mandatory.*—The act of 1920 (Acts 1920 [Spec. Sess.] p. 196, §10878 Burns 1926) providing for a division of the fire force into two platoons in cities of more than 15,000, one for day service and one for night service, is mandatory, and its enforcement is not discretionary with the city officials whose duties are to put it into effect.   p. 86.

10. MUNICIPAL CORPORATIONS—*Except as restrained by the Constitution, cities are subject to the continuous control of the legislature.*—Cities are agents of the state, drawing all their governmental and administrative authority from legislative enactment, and, except as restrained by constitutional restrictions, are subject to the continuous exclusive control of the legislature.   p. 86.

11. CONSTITUTIONAL LAW.—*Duty of party claiming statute to be unconstitutional.*—Any one claiming a statute to be unconstitutional as contrary to a power expressly reserved to the people by the Constitution should call the court's attention to the specific provision by which the reservation is made.   p. 87.

12. CONSTITUTIONAL LAW.—*Statute providing for division of fire force into platoons not ex post facto.*—The act of 1920 (Acts 1920 [Spec. Sess.] p. 196, §10878 Burns 1926) providing for the division of the fire force into two platoons in cities of more than 15,000, one for day service and one for night service, is not an *ex post facto* law, as it does not apply to anything done before the passage of the statute.   p. 87.

State, ex rel., *v.* Morris, Mayor—199 Ind. 78

13. CONSTITUTIONAL LAW.—One who seeks to have a statute declared unconstitutional must affirmatively establish that the statute impairs his rights and is prejudicial to them. p. 87.

14. CONSTITUTIONAL LAW.—*Statute providing for division of fire force into platoons for day and night service not unconstitutional as impairing the obligation of existing contracts as to hours of service.*—The act of 1920 providing for the division of the fire force into two platoons in cities of more than 15,000, one for day service and one for night service, is not invalid as impairing the obligation of contracts, although it had the effect of shortening the hours of service of the members of the force, as the legislature has complete authority to lessen or increase the duties of municipal officers. p. 87.

15. CONSTITUTIONAL LAW.—The rule is almost universal that legislative power is limited only by express inhibitions of the Constitution. p. 88.

16. MUNICIPAL CORPORATIONS.—*Statute providing for division of fire force into day and night platoons not invalid as violating principle of local self-government.*—The act of 1920 providing that in cities of more than 15,000, having a regularly organized and paid fire force, such force shall be divided into two platoons, one for day service and one for night service, does not violate the principle of local self-government, but is a valid police regulation as to the working conditions of such fire force (*State, ex rel.,* v. *Denny,* 118 Ind. 382, and *State, ex rel.,* v. *Fox,* 158 Ind. 126, distinguished). p. 88.

From Floyd Circuit Court; *John N. Paris,* Judge.

Action of mandate on the relation of Walter D. Schroeder and others against Robert A. Morris, mayor of the city of New Albany, and other officials of said city. From a judgment for defendants, the relators appeal. *Reversed.*

*Claude B. McBride* and *Jonas G. Howard,* for appellants.

*Charles R. Turner* and *Charles P. Tighe,* for appellees.

MYERS, J.—The relators, each of whom are members of the regularly organized and paid fire force of the city of New Albany, appellants here, on June 19, 1925, commenced this action in mandate in the Floyd Circuit Court against the appellees, the mayor of the city of New Albany, two members of the board of safety, and members of the common council of that city, for an order

compelling such city officers to comply with the alleged provisions of ch. 57, Acts 1920 (Spec. Sess.) p. 196, §10878 Burns 1926.

Separate demurrers to the complaint for want of facts filed by the mayor, the members collectively of the board of safety and the members collectively composing the common council, were sustained and each of these rulings is separately assigned as errors.

The complaint shows that the city of New Albany, according to the last preceding census of the United States, has a population of more than 15,000; that it has a regularly organized and paid fire force; that on January 1, 1921, and continuously since that time, the mayor, board of safety and common council of the city of New Albany have failed and refused to divide the fire department into two bodies or platoons, one to perform day service and one to perform night service, and as a result of such refusal, relators, ever since January 1, 1921, and now, are performing double duty and work without additional compensation; that the common council refuse to make an appropriation sufficient to pay firemen necessary to a fire department of two platoons, and that relators are without an adequate legal remedy.

The statute, *supra,* here in question, reads as follows: "That the fire department or fire force in every city or town with a population exceeding fifteen thousand (15,000) according to the last preceding census of the United States, and having a regularly organized paid fire department or fire force, shall be divided into two bodies or platoons, one to perform day service and one to perform night service. In cases of emergency, the chief of the fire force, or the assistant chief or the chief officer in charge at any fire, shall have power to assign all members of the fire force to continuous duty, or to continue any member thereof on duty, as may be nec-

essary. No member of either of said platoons shall be required to perform continuous duty for a longer consecutive period than 24 hours; excepting as may be necessary to equalize the hours of duty and service and also except when necessary as above provided.

"This act shall take effect the first day of January, 1921."

In the first place, this statute is awkwardly worded, but since we may disregard grammatical construction when, from the language used, the legislative intention is explicit (*State* v. *Myers* [1896], 146 Ind. 36, 44 N. E. 801; *Grand Trunk, etc., R. Co.* v. *State* [1907], 40 Ind. App. 695, 82 N. E. 1017), it is our conclusion that the legislature purposed by this enactment that a regularly municipally organized paid fire department or fire force, in every city or town with a population exceeding 15,000 according to the last preceding United States census, shall be divided into two bodies or platoons, one to perform day service and the other to perform night service.

1, 2.

The theory of the complaint is that appellees, as city officers, by the above statute, were charged with a mandatory and imperative ministerial duty, that is to say, the law having expressly commanded a specific thing to be done involving administrative action, in this case imposed upon appellees alone, they thereby were charged with the performance of an undiscretionary duty.

The memorandum designed by the statute (§362, cl. 6, Burns 1926) does not contemplate, as a part thereof, argument and general observations of counsel. Its purpose is to point out clearly and concisely the facts wanting in the pleading to make it sufficient on the theory upon which it is predicated. *State, ex rel.,* v. *Bartholomew* (1911), 176 Ind. 182, 95 N. E. 417, Ann. Cas. 1914B 91; *Hedekin Land, etc., Co.* v. *Campbell* (1916), 184 Ind. 643, 112 N. E. 97; *Locomo-*

3.

*tive Engineers', etc., Assn.* v. *Higgs* (1922), 79 Ind. App. 427, 135 N. E. 353.

By eliminating the redundant matter in the memorandum before us, the defects in the complaint relied on are, want of facts showing: (1) Interest or special damage entitling relators to invoke the statute; (2) a joint cause of action in their favor; (3) statute mandatory and not directory; and (4) it affirmatively appears that the statute on which relators rely is unconstitutional and void.

It appears that relators were all employed in one common cause and performing like service in compliance with the requirement of a regularly organized paid fire department of a city having a population within the classification of cities over which the legislative enactment in question was made to apply. They had the same special and peculiar interest in the enforcement of the statute which purposed to lessen the hours of continuous duty of each and all of them. The refusal of the city officers to do their duty under the statute in question is the act of which they all complain. This showing of a common interest in the final determination of the real question at issue was sufficient to repel the first two objections made to the complaint. *Shira* v. *State, ex rel.* (1918), 187 Ind. 441, 119 N. E. 833; *State, ex rel.,* v. *Mount* (1898), 151 Ind. 679, 51 N. E. 417; *Cress, Trustee,* v. *State, ex rel.* (1926), 198 Ind. 323, 152 N. E. 822; *State, ex rel.,* v. *Everett* (1918), 101 Wash. 561, 172 Pac. 752, L. R. A. 1918E 411; *Board, etc.,* v. *State, ex rel.* (1911), 175 Ind. 147, 93 N. E. 851; *Hughes* v. *Outlaw* (1916), 197 Ala. 452, 73 So. 16, Ann. Cas. 1918C 872; Ann. Cas. 1912B 420, note; 38 C. J. 842, §548.

According to the last United States census, we judicially know (*City of Huntington* v. *Cast* [1898], 149 Ind. 255, 48 N. E. 1025) that the city of New Albany has a population of over 20,000 and there-

fore a city of the third class. Acts 1909 p. 13, §10261 Burns 1926. Its legislative authority is vested in its common council (Acts 1905 p. 244, §47, §10278 Burns 1926), which is empowered to appropriate money for the support of the city's various departments (Acts 1905 p. 245, §52, §10283 Burns 1926), of which its board of public safety is one, and under its control is the fire department. Acts 1909 p. 13, §8, §10860 Burns 1926.

It is the duty of the mayor to preside at all meetings of the common council, and, in case of a tie, cast the deciding vote. Acts 1905 p. 244, §49, §10280 Burns 1926. He is given veto power as to all ordinances, orders or resolutions for the appropriation of money for any purpose. In case of a veto, two-thirds vote of all the council members-elect is required to again pass such ordinance, order or resolution. §10283, *supra.*

While the question has not been raised or presented, it will not be improper to suggest that it thus appears that the mayor, common council and board of 6, 7. safety, appellees here, and all by the complaint shown to have refused to comply with the alleged mandate of the statute, may severally be important factors in delaying, if not defeating, the alleged purpose of the statute, and for that reason, and that full relief may be granted in a single action, it was not improper to join them as defendants. *Gruber, Trustee,* v. *State, ex rel.* (1925), 196 Ind. 436, 148 N. E. 482.

However, appellees contend that the statute in question is directory and not mandatory. This contention is based upon the thought that the statute is remedial and its application is left to official discretion. They say that the complaint brings the city of New Albany within the letter of the statute, but not within the reason of it, and hence "cases not within the reason, though within the letter, shall not be taken to be within

the statute." Citing, *Traudt* v. *Hagerman* (1901), 27 Ind. App. 150, 60 N. E. 1011. In support of this contention, they assert that the complaint must state facts showing that the enforcement of the statute would better serve the safety of the community of New Albany, or that its enforcement was necessary for its welfare, or that the present fire department was inefficient, or that the working conditions of the firemen were bad. All of these matters were pertinent in determining the wisdom, expediency, justice or reason impelling the legislature to act, but they furnish no substance for judicial interference with legislative judgment. *State, ex rel.,* v. *Fox* (1902), 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893; *Kerr* v. *Perry School Tp.* (1904), 162 Ind. 310, 314, 70 N. E. 246; *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7.

Let it be said that the statute is remedial, but that fact alone is no legal reason, not even an excuse, for disregarding it. It is a property safety measure,

8. in which the public generally has an interest, and, as we have seen, appellees collectively constitute the regularly organized machinery by which its provisions are made effective. Its language is imperative in form and even if it be regarded as remedial and be liberally construed, such construction only extends to effectuate the legislative intention to advance a remedy, which, if applied in the instant case, would be possibly in the interest of the public and to suppress the mischief of continuous service on the part of the personnel of the city's fire department.

To construe a statute liberally is but to express the legislative intention to be drawn from the chief purpose of the law, its context, its subject-matter and the consequences which would result from construing it one way or the other, and nothing more.

As we read the instant statute in connection with relative rules for its construction, we are persuaded to

conclude that it was not the intention of the legislature to supply some defect in the law, or give a new remedy alone, but to go farther and charge cities having a population exceeding 15,000 with a positive public duty. This conclusion places the present case within the class to which the rule announced in the Traudt case, *supra,* does not apply. The provisions of the statute at bar are mandatory.

Lastly, it is said that the statute is inhibited by our state Constitution. The city of New Albany is a political subdivision of the state. Its governmental and administrative power is by virtue of legislative authority. Within its territorial jurisdiction, it is an agent of the state, and except as specially restrained by constitutional restrictions, it is within the continuous exclusive control of the legislature. Nevertheless, appellees say that the management of New Albany's fire department is a prerogative of local self-government and beyond the power of legislative interference. If we get the point to their argument in this respect, they justify their action of refusal upon the theory of "reserved power of the people." In *Wright* v. *House* (1919), 188 Ind. 247, 259, 121 N. E. 433, it is said: "If the term 'reserved power of the people' is intended to apply to some power which the people expressly reserved unto themselves by the terms of the Constitution, the provision of that instrument by which such reservation is made should be called to the attention of this court." Appellees have assumed to do this by reference to Article 1, §24, Constitution of Indiana,—"No ex post facto law or law impairing the obligations of contracts shall be passed." We shall limit our observations to the question thus suggested regardless of what otherwise might be said.

There is no pretext for saying that the statute under consideration applies to any act or thing done before the

passage of the law, nor has it been made to appear that any contract would be impaired by it, other than to assert that there is a contractual relation existing between the members of the fire department and the city, which the present statute abrogates.   The rule is well settled that a party who seeks to have a statute declared unconstitutional "must affirmatively establish that the same impairs his rights and is prejudicial thereto."   *Currier* v. *Elliott* (1895), 141 Ind. 394, 407, 39 N. E. 554.   There is no such showing in this case.   True, the General Assembly is inhibited by our Constitution from passing laws impairing the obligation of contracts or laws that will affect the construction of existing contracts.   For the sake of the argument, let us assume that the city of New Albany had an arrangement with its fire fighters whereby they were to be on continuous duty and that the act in question shortened the hours of continuous service.   Under such circumstances, does the statute violate the above contract provision of the Constitution?   We say not. The members of a paid fire department in cities so classified by the statute perform duties of a public character, and they are employed or appointed by public officers or boards created by the General Assembly by virtue of the power delegated to it by the people. Art. 4, §1, Constitution of Indiana.   The city, its officers, whether elective or appointive, of whatever grade, must take notice that the legislative authority, except as restrained by the Constitution, "is at all times absolute with respect to all offices within its reach.   It may at pleasure create or abolish them, or modify their duties."   It may also shorten or lengthen the term of any office created by it not longer than four years. Art. 15, §2, Indiana Constitution; 2 Lewis, Sutherland Statutory Construction (2d ed.) §662.

Appellees are not protected in the position they have

taken toward the instant statute by the constitutional provision upon which they rely. On the question of local self-government, we are advised of exceptional cases where legislation has been stricken down upon what is sometimes called the "reserved power of the people." Such cases are not made to rest upon any express written prohibition in the Constitution, but upon restraints of legislative power to be drawn from the inhibitory words and the language employed, considered and construed as of the time and under the circumstances surrounding the framers of the organic law. That reasoning was adopted by this court in *State, ex rel., v. Denny, Mayor* (1889), 118 Ind. 382, 21 N. E. 252, 4 L. R. A. 79, and *State, ex rel., v. Fox* (1902), 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893. We have read the Denny and Fox cases carefully, and under the particular facts then before the court, the reasoning announced seems to be sound, but we are not inclined to extend but to treat the doctrine followed in those cases as an exception to the almost universal rule that legislative power is limited only by the express inhibitions of the Constitution.

We do not regard the underlying principle of local self-government as controlling the decision of the present case. The act before us is, in its nature, a police regulation. It has to do with working conditions alone—health and welfare of society. It applies alike throughout the state to all persons similarly situated, and is of general application to all towns, cities and persons of the same class. Appellees, by virtue of their respective official positions, are charged with certain statutory duties in the management and promulgation of laws pertaining to the corporate affairs and business welfare of the city. They are, therefore, within the purview of the statute at bar. While they represent the city of New Albany, they are nevertheless, to a limited

extent, agents of the state for the purpose of administering all reasonable laws of a regulative character, as here shown, and not forbidden by the State or Federal Constitutions, and the laws and treaties passed and made pursuant thereto. The present law merely fixes a duty upon statutory classified cities, and the performance of that duty is left to the local officers of each city. The state does not assume to take from the city of New Albany the management of its city fire department, or restrict its right of possession or control of its fire apparatus or dictate the quantity, quality or character of its fire fighting tools and instruments, or whom it shall or shall not employ as firemen; nor does it assume to tell the city of New Albany that it shall maintain a fire department at all. It does, however, make it imperative on towns and cities in this state that maintain a regularly organized paid fire department, twenty-one in number in 1920, with an aggregate population of 1,055,643, to adopt the platoon system. The act in question is constitutional.

Judgment reversed, with instructions to overrule each of the demurrers to the complaint.